E-FILED
Monday, 08 June, 2026 03:07:24 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

TERRANCE LAMAR TAYLOR,
  Plaintiff,

v.

CITY OF PEORIA, *et al.*,
  Defendants.

Case No. 1:26-cv-1051

**Order**

Now before the Court is the Defendant, Bernard Butler's Motion to Dismiss (D. 28) the Plaintiff, Terrance Lamar Taylor's Third Amended Complaint. For the reasons set forth below, the Defendant's Motion is DENIED.[1]

**I**

On March 27, 2026, the Plaintiff filed his Third Amended Complaint. (D. 25). The Defendant filed this Motion to Dismiss on April 20, 2026 (D. 28), to which the Plaintiff timely responded. (D. 33). With his response, the Plaintiff filed a USB drive containing certain photographs and documents. (D. 34).[2] The Defendant then filed a reply (D. 44), to which the Plaintiff filed a surreply. (D. 46). This matter is therefore fully briefed.

**II**

This case centers on the Plaintiff's allegations that the Defendants mischaracterized the Plaintiff's slip-and-fall as a suicide attempt, which forced him

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] The exhibits provided by the Plaintiff were primarily photos of a chair in the Plaintiff's garage, and were otherwise not overly helpful or determinative. Accordingly, the Court—having hardly considered those exhibits—declines at this stage to convert this Motion into a motion for summary judgment.

to undergo a forced medical evaluation and cost him his right to possess firearms. At around 9:10 PM on August 8, 2025, the Plaintiff alleges that he "parked his truck in the driveway, and entered the detached garage to begin running wires for a new wall-mount garage door opener installation." (D. 25 at ECF p. 3). After deciding it was getting late, he backed his truck into the garage. While doing that, he purportedly "bumped a blue plastic chair on the rear right passenger side of the vehicle." (*Id*. at ECF p. 4).

He further alleges that "the battery to the key fob of the home alarm system was dead"; and so, he "attempted to run quickly from the garage into the home to disarm the alarm … but tripped and fell instead." *Id*. In response to this burglary alarm, the Defendants—Peoria police officers and a member of the Trillium Mobile Crisis United (Defendant-Butler)—were dispatched to the Plaintiff's home. "Upon arrival, officers encountered Plaintiff outside the garage on his wooden deck, lying on his back" after his fall "temporarily rendered him unconscious." *Id*.

The Plaintiff awoke once the officers began interacting with him. One of the officers cuffed the Plaintiff and asked the Plaintiff what he was doing; the Plaintiff responded: "I live here, this is my house." *Id*. While in the backseat of the patrol car, the Plaintiff heard an officer relay that "Plaintiff may have wanted to kill himself." (*Id*. at ECF p. 5). Then, Defendant-Butler noted that there was "'enough suspicion' to justify initiating or supporting involuntary mental-health commitment proceedings." *Id*.

The Plaintiff was then brought to the hospital for a psychiatric evaluation. There, the Plaintiff noted allegedly-inaccurate assertions by Defendant-Butler "that Plaintiff was found face-down on his deck with a vehicle actively running in the garage …." *Id*. In light of this, "[o]fficers … alleged that Plaintiff had intentionally attempted suicide by blocking the exhaust of a truck with chairs …."

(*Id.* at ECF p. 6). The Plaintiff, meanwhile, contends that no chairs ever were blocking his truck's exhaust, and that he was found not face-down, but on his back.

The officers also seized the Plaintiff's firearm from his truck. Then, on August 15, 2025, "the Illinois State Police revoked Plaintiff's Firearm Owner's Identification Card" after classifying him as a "clear and present danger". (*Id.* at ECF p. 11). Consequently, the Plaintiff filed his now-Third Amended, six-count Complaint. He alleges:

- Count One: Fourth Amendment: Unreasonable Seizure of Person/Property (against all Individual Defendants);
- Count Two: Failure to Intervene (against all Individual Defendants);
- Count Three: Fabrication of Evidence (against all Individual Defendants);
- Count Four: Stigma-Plus Due Process (against all Individual Defendants);
- Count Five: Second Amendment: Unlawful Disarmament (against Defendants Gregory and Koposky); and
- Count VI: *Monell* Municipal Liability (against the City of Peoria).

Every Defendant except for Defendant-Butler filed an Answer to the Third Amended Complaint. (D. 27). In the pending Motion, Defendant-Butler seeks to dismiss each claim brought against him (Counts One through Four). In support, the Defendant invokes a broad argument that the Plaintiff fails to plead a "violation of protected rights." (D. 29 at 6). He also argues that qualified immunity should be applied to all claims.

### III

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2)

provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.* The Court is to draw all reasonable inferences in favor of the non-movant, but the Court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 665-66 (7th Cir. 2014) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

IV

The Defendant employs two arguments to dismiss all four claims brought against him. The first is that, under section 1983, the Plaintiff has not pleaded a "violation of protected rights" as to his four claims. (D. 29 at ECF p. 6). The second is that the Defendant is entitled to qualified immunity as to all four claims.

A

The Defendant first seeks to dismiss the Plaintiff's complaint for failure to state a claim under § 1983. "A plaintiff must allege two elements to state a § 1983 claim: '(1) the conduct complained of was committed by a person acting under

4

color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Matthews v. Tienda*, No. 11 C 3353, 2014 WL 7360670, at *2 (N.D. Ill. Dec. 22, 2014) (quoting *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003)). The Defendant does not meaningfully contest that the Plaintiff plausibly alleges the state-actor requirement. What remains, then, is whether the Plaintiff has pleaded constitutional violations.

The Plaintiff brings four § 1983 claims against the Defendant: (1) Unreasonable Search and Seizure; (2) Failure to Intervene; (3) Fabrication of Evidence; and (4) Stigma-Plus Due Process. The Defendant does not address each of these four claims in detail. Rather, the Defendant's effort to dismiss all four of these claims is limited to his argument that the Plaintiff "fails to present any sort of plausible case that these few actions and decisions by Mr. Butler constituted a violation of Plaintiff's civil rights". (D. 29 at ECF p. 7). The Court, accepting the Plaintiff's allegations as true and drawing reasonable inferences in his favor, will briefly address in turn each claim.

**1**

As to the unreasonable search and seizure claim, the Plaintiff alleges that "Defendants seized Plaintiff by subjecting him to involuntary detention and emergency mental-health evaluation." (D. 25 at ECF p. 13). He further alleges that they did so without "probable cause or objectively reasonable grounds … to believe Plaintiff imposed an imminent danger to himself or others." *Id*. This seizure then led to the Plaintiff's "involuntary detention and emergency mental-health evaluation." (*Id*. ECF p. 13). Further, as a result, the Plaintiff's firearms were seized, and his firearm license revoked.

The Defendant does not carry his burden that these allegations fail to allege a "violation of Plaintiff's civil rights". (D. 29 at ECF p. 7). The operative Complaint certainly alleges that the Defendant was among the group who responded to the

alarm at the Plaintiff's home, and contributed to the understanding that the Plaintiff had engaged in a suicide attempt. This, then, led to the Plaintiff's detention, involuntary examination, and the seizure of his firearms and firearm license.

Plainly, the Plaintiff alleges that he was subject to an unreasonable seizure, in which the Defendant was a participant and actor. Perhaps the Defendant is correct that ultimately, discovery will disprove the Plaintiff's version of the story. But that question is inappropriate to answer at this elementary stage. As it currently stands, the Defendant has raised a dispute of fact as to whether the Plaintiff engaged in a suicide attempt; the details of the scene; the Plaintiff's behavior; and other relevant factors. A factual dispute, of course, fails to carry the Defendant's burden under Rule 12. Accordingly, the Motion is denied on this score. *See Abeles v. Oppenheimer & Co.*, 597 F. Supp. 532, 534 (N.D. Ill. 1983) (denying motion to dismiss because, in part, "factual disputes are inappropriate when the case is before the court on a motion to dismiss"); *Droysen v. Hansen*, 59 F.R.D. 483, 484 (E.D. Wis. 1973) (denying motion to dismiss § 1983 claim because "[o]n a motion to dismiss, the allegations of fact in plaintiff's complaint are taken as true, and all inferences from those facts are drawn in plaintiff's favor. Defendants' affidavits which dispute the factual allegations have no bearing on such a motion.").

**2**

For similar reasons, the Plaintiff's failure to intervene claim also survives. He alleges that, amidst his unreasonable search and seizure, each of the participating actors "had a realistic opportunity to intervene … but failed to do so." (D. 25 at ECF p. 14). The Defendant does not argue specifically against this claim; rather, he applies his general argument that the Plaintiff fails to allege a civil rights violation.

The Court again disagrees. The Defendant is adequately alleged to be among several actors in the Plaintiff's seizure. Consequently, the Defendant is also plausibly alleged to be a party to this failure to intervene claim, in which none of the Defendants acted to stop the Plaintiff's seizure. Perhaps the facts will reveal that the Plaintiff's detention was indeed reasonable, or that the Defendant was not a direct participant. But at this stage, we must accept as true the Plaintiff's well-pleaded allegations that he endured an unreasonable seizure in which none of the Defendants intervened. The Motion is thus denied on this score. *See Del Prete v. Vill. of Romeoville, Illinois*, No. 17-CV-6145, 2025 WL 446260, at *18 (N.D. Ill. Feb. 10, 2025) ("The allegations that the individual defendants were aware of constitutional violations, had opportunities to intervene, and failed to do so therefore are plausible, and the Romeoville Defendants' motion to dismiss falls short as to the failure to intervene theory as well.").

**3**

The Court also denies the Defendant's Motion as to the fabrication of evidence claim. Here, the Plaintiff alleges that, to initiate the Plaintiff's seizure and involuntary examinations, the Defendants fabricated several events. These fabrications include that "Plaintiff had attempted suicide, that a vehicle was running inside the garage, that the exhaust was intentionally obstructed," and that the Plaintiff was "found face down". (D. 25 at ECF p. 15). The Defendant, once again, does not provide the Court with much ammunition; he simply levies his broad argument that the Plaintiff has not alleged a civil rights violation.

This thinly-veiled argument will not satisfy the Defendant's burden at this stage. There may exist more precise legal arguments at a later stage that this claim is not available absent an arrest or prosecution, the damages are redundant of the Plaintiff's stigma-plus claim, or other roadblocks. But accepted as true and with inferences drawn in his favor, the Plaintiff's allegations plausibly state a

fabrication of evidence claim under § 1983. *See Dunn v. Sigsbee*, No. 3:24-CV-601-CCB-JEM, 2025 WL 2643363, at *4 (N.D. Ind. Sept. 15, 2025) (denying motion to dismiss in light of allegations that investigating officers "fabricate[d] false expert opinions in order to bring charges against [the plaintiff]", and "manufacture[d] a false opinion" that culminated in the plaintiff's arrest and conviction).

**4**

Lastly, the Court addresses the Plaintiff's stigma-plus claim. There, he alleges that the Defendants "communicated and caused to be recorded false statements portraying Plaintiff as suicidal, dangerous, or mentally unstable despite the absence of objective evidence supporting such characterizations." (D. 25 at ECF p. 15). These statements and false accusations, the Plaintiff alleges, led to his involuntary detention and loss of firearms rights.

The Defendant, again, does not make any arguments that are specific to this stigma-plus claim. The Court, then, will simply screen the allegations to ensure the Plaintiff states a claim. To do so, he must allege that "the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held." *Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019). Here, the Plaintiff alleges that (1) state actors (including the Defendant) misstated that the Plaintiff had attempted suicide and had mental health concerns, and as a result, (2) the Plaintiff was seized and lost the right to possess a firearm. In light of the Defendant offering no real resistance against these allegations (aside from broad factual disputes), the Court is inclined to deny the Motion on this score.

There may later exist questions as to whether the Plaintiff truly suffered "reputational" damage or the extent to which the allegedly-false statements were published. But on the current record and briefing, the Plaintiff's stigma-plus claim survives this Motion.

**B**

Next, the Court assesses the Defendant's qualified immunity defense. The application of qualified immunity hinges on a two-part test: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). The Court has already concluded *supra* (Section A) that the Plaintiff has, for purposes of this motion to dismiss, pleaded constitutional violations. What remains, then, is the second prong: whether the relevant rights were clearly established. The Court will determine whether each claim satisfies this standard.

**1**

The Plaintiff's first and second claims plainly satisfy this standard. Under claim one, the Plaintiff pleads a rather straightforward example of an individual who was searched and seized without a reasonable basis. That is, a reasonable law enforcement officer (or, in the Defendant's case, an actor working with and assisting law enforcement) would know that a search and seizure without a reasonable basis would violate the Fourth Amendment. This factual scenario, particularly at the pleading stage of a § 1983 case, staves off dismissal. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000) ("In addressing the district court's denial of defendants' motion to dismiss based on qualified immunity, we note that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."); *Contorno v. McCann*, No. 04 C 3448, 2007 WL 1232084, at *5 (N.D. Ill. Apr. 25, 2007) (finding that the plaintiff had "stated claims for violations of his Fourth Amendment rights to be free of unreasonable search and seizure … which were clearly established at the time of the alleged conduct" where the plaintiff plausibly

9

alleged that "the requisite reasonable suspicion for the original stop and probable cause for the subsequent search and arrest … was lacking").

The same goes for the Plaintiff's failure to intervene claim (which the Court found *supra* was plausibly alleged). *See Lark v. City of Evanston*, No. 16 C 4630, 2017 WL 413615, at *5 (N.D. Ill. Jan. 31, 2017) (rejecting qualified immunity argument at motion to dismiss stage where "Defendant Officers do not point to laws so unclear as to grant them immunity from suit at this stage. The reasonability of whether officers failed to intervene in an allegedly unlawful search [or seizure] is a highly fact-dependent inquiry.").

**3**

Next comes the Plaintiff's fabrication of evidence claim. Here, the Defendant argues that despite the Plaintiff's allegations, the Defendant "was not fabricating anything", but rather "was relying in good faith on what the police officers told him". (D. 29 at ECF p. 10).

Again, the Court is bound by the Plaintiff's allegations, and is cautious to grant qualified immunity in this early stage absent an iron-clad argument by the Defendant. Plainly, there exists a factual dispute: the Plaintiff alleges that the Defendant worked in tandem with law enforcement to fabricate accusations to detain the Plaintiff (and ultimately cost him his firearm rights), and the Defendant avers that he engaged in no such behavior. The Defendant may very well disprove the Plaintiff's set of events. But at this initial juncture, the Court is unable to resolve a factual dispute in the Defendant's favor. *See Paul-Edwards v. Heinz*, No. 3:25-CV-03270-JEH-RLH, 2026 WL 1266112, at *7 (C.D. Ill. May 8, 2026) ("Finally, the IDOC Defendants argue they are entitled to qualified immunity because Plaintiff did not allege facts demonstrating a constitutional violation and cannot meet her burden to show that they violated clearly established law when they failed to prevent misconduct which they had no knowledge of. Defendants' qualified immunity

10

argument turns on a disputed factual issue … which is not suitable for resolution at the pleading stage."); *Bond v. Aguinaldo*, 265 F. Supp. 2d 926, 930 (N.D. Ill. 2003) ("Here, he has adequately alleged that Dr. Garcia acted with deliberate indifference to his serious medical needs, which is an allegation of conduct that violated a clearly established constitutional right. Because the record requires further development of the seriousness of Mr. Bond's medical needs and whether Dr. Garcia acted with deliberate indifference to those needs, dismissal on the grounds of qualified immunity is inappropriate here.").

**4**

Lastly, the Defendant seeks qualified immunity against the Plaintiff's stigma-plus claim. On this score, the Defendant briefly argues that "[f]reedom from 'stigma' is not a recognized constitutional right." (D. 29 at ECF p. 10).

As an initial matter, it is unclear why the Defendant argues that stigma-plus claims are not recognized under the Constitution. *See Santana v. Cook Cnty. Bd. of Rev.*, 700 F. Supp. 2d 1023, 1031 (N.D. Ill. 2010) (rejecting qualified immunity argument against stigma-plus claim because, in part, "it is well established that 'stigma plus' injuries and occupational liberty are protected under the Due Process Clause"). Effectively, the Plaintiff alleges that the Defendant's false statements lead to his unreasonable seizure, a wrongful, involuntary mental health evaluation, and the loss of his rights to possess a firearm. Without more precise argument that the Plaintiff has not pleaded the deprivation of "a recognized constitutional right" (D. 29 at ECF p. 10), the Court lacks grounds to accept the Defendant's argument.

**V**

For the reasons set forth above, the Defendant, Bernard Butler's Motion to Dismiss (D. 28) is denied. The Defendant is to file its Answer to the Plaintiff's Third

11

Amended Complaint within fourteen days and this matter is referred to Magistrate Judge Hanna for further proceedings.

Should a party file a motion for reconsideration that is subsequently denied by the Court, the party filing the motion will be responsible for the attorneys' fees of the opposing party related to the response to the motion for reconsideration.

*It is so ordered.*

Entered on June 8, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE